## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP R. SHAWE,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ROBERT B. PINCUS, ESQ., in his<br>official capacity as court-appointed<br>Custodian,<br><br>　　　　　　Defendant. | Case No. |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPREMACY CLAUSE

Plaintiff Philip R. Shawe ("Shawe") as and for his Complaint alleges as follows:

1.　　This is an action for declaratory and, if necessary to prevent the unconstitutional actions threatened here, preliminary and permanent injunctive relief, to redress and prevent violations of Shawe's rights secured by the Supremacy Clause (Article VI), and the First, Fifth, and Fourteenth Amendments to the United States Constitution, arising from the unconstitutional actions of Defendant Robert B. Pincus ("Pincus"), the court-appointed custodian of TransPerfect Global, Inc. ("TPG"), of which Shawe is a 49% owner, and which Shawe co-founded and built from a dorm-room start-up when he was 22 years old to a more than half-billion dollar enterprise, and to which he has devoted the past 25 years of his life.

2.　　Defendant Pincus, directly and through his personally selected agents, has threatened Shawe with illegal and unconstitutional sanctions in retaliation for Shawe's exercise of his constitutional rights, including his rights of free speech and access to the federal courts, and seeks to impose unconstitutional restrictions upon Shawe as a condition to permit Shawe to

participate in the court-imposed forced auction of TPG to the highest bidder (the "Forced Sale"),

3.     This action originates from a purely private party business dispute between Shawe and non-party Elizabeth Elting ("Elting"), a 50% owner of TPG, over management of TPG, a holding company headquartered in New York, and incorporated in Delaware, and its main wholly-owned operating subsidiary, TransPerfect Translations International, Inc. ("TPI"), a New York corporation headquartered in New York. The dispute over TPG is currently the subject of ongoing litigation between Shawe and Elting in the Delaware state courts. Neither the State of Delaware, nor Defendant Pincus is a party to that litigation.

4.     In unprecedented interlocutory decisions in August 2015, and June and July 2016, affirmed by the Delaware Supreme Court on February 13, 2017, the Delaware Court of Chancery construed 8 Del. C. § 226 for the first time to authorize the chancery court to force stockholders of a Delaware corporation, against their will, and in violation of the United States Constitution, to offer for sale to other private parties their personal property – shares of stock in that corporation – and forcibly to transfer that personal property directly to another private party, unless the stockholder participates in and outbids all other prospective buyers for the remaining stock in a court-ordered auction process open to any private party bidders.

5.     In retaliation for Shawe's exercise of his constitutional rights to oppose the State of Delaware's forced taking of his private property to benefit other private parties, including in the United States District Court for the District of Delaware (the "Delaware Federal Action"), and because Shawe has challenged Pincus's efforts to compel Shawe to make false, misleading and incomplete statements as part of the Forced Sale process, Pincus, directly and through his agents, has threatened to impose punitive sanctions on Shawe, specifically, to have the Delaware courts:  1) deprive Shawe of the right to participate in the (illegal and unconstitutional) Forced

Sale; and 2) to impose (illegal and unconstitutional) uncompensated, non-contractual post-employment non-competition and non-solicitation restrictions on Shawe.

6.    Pincus has also demanded, as an unconstitutional condition ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

## JURISDICTION

7.    Plaintiff's claims are brought pursuant to the Supremacy Clause of Article VI of the Constitution of the United States, which creates a private right of action, and pursuant to 42 U.S.C. § 1983 for violations of the First, Fifth and Fourteenth Amendments to the Constitution, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

8.    This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a)(3).

9.    The Delaware state court proceedings are ongoing, and no final state court judgment has been entered concerning the Forced Sale.

10.   As a result of Pincus's illegal and unconstitutional threats in retaliation for Shawe's exercise of his constitutional rights, and Pincus's illegal and unconstitutional demand

████████████████████████████████████████████████████████████

████████████████████████████████████████ this action is ripe for adjudication.

11.   Venue of this action is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims herein occurred in this District, where

3

the business of TPG and TPI is headquartered; where the Forced Sale process is occurring; where the great majority of Pincus's and his advisers' actions in connection with the Forced Sale have occurred; and where the unconstitutional threats and conditions against Shawe were made and/or directed.

12.     This Court has personal jurisdiction over Defendant Pincus, who, in his capacity as court-appointed custodian, has engaged in extensive activities while physically present in, and directed at, the State of New York in connection with the Sale Process, including the unconstitutional threats and actions directed at Plaintiff in New York upon which the claims herein arise.

## PARTIES

13.     Plaintiff Philip R. Shawe is a resident and citizen of the State of New York, resides in this District, is the owner of 49 shares of stock (49%) of TPG, and is a director and a co-CEO of TPG, and is an employee, director and co-CEO of TPI in New York City.

14.     Defendant Robert B. Pincus is an attorney and partner of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), in Skadden's Wilmington, Delaware office. Pincus is the custodian appointed by the Delaware chancery court to conduct the unconstitutional Forced Sale of TPG, and to act as a tie-breaking third director of TPG pending the Forced Sale. Pincus, whom the chancery court purported to grant "judicial immunity" "to the fullest extent permitted by law," is a state actor and is acting under color of law within the meaning of 42 U.S.C. § 1983 concerning the matters alleged herein. Pincus conducts much of his activity in connection with the Forced Sale while physically present in New York, and through his agents, who are physically present in New York, or through actions directed at TPI's and TPG's operations in New York, and at persons present in New York, including Plaintiff Shawe.

## FACTS

### TransPerfect Global, Inc.

15.    TPG is a Delaware corporation with its headquarters in New York, New York.

16.    TPG wholly owns TPI, a New York corporation headquartered in New York, which is TPG's main operating company (TPG and its subsidiaries are generally collectively referred to as "the Company").

17.    Shawe and non-party Elizabeth Elting ("Elting") are the co-founders, co-Chief Executive Officers, and prior to the appointment of the Custodian, the sole members of the board of directors of TPG since TPG's incorporation in Delaware in 2007.  Elting resides in this District, is the owner of 50 shares of stock (50%) of TPG, and is an employee of TPI in New York.

18.    In 1992, Shawe and Elting co-founded the business that became TPG when they lived together in a dormitory room while graduate students at the Stern School of Business at New York University.

19.    The Company has grown to become one of the world's leading providers of translation, website localization, and litigation support services, and in early 2015, had 92 offices worldwide, employed more than 3,500 full-time employees, with a network of more than 10,000 translators, editors, and proofreaders working in approximately 170 different languages.

20.    Today, the Company employs approximately 4,000 full-time employees, with over 100 offices throughout the world.

21.    The Company is highly profitable, with 2014 revenues of more than $470 million, increasing to $545 million in 2016, and with total net profits from 2013-2016 of over $260 million.

22.     Shawe has devoted the past 25 years of his life, since age 22, to building TPG into an extraordinarily successful, thriving, extremely profitable, more than half-billion dollar company.

23.     The remaining 1% (one share) of TPG stock is owned by Shirley Shawe, a 76 year-old retiree, who is a resident and citizen of the State of Florida, and the mother of Philip Shawe.

24.     Both when TPG was incorporated in 2007, and thereafter, Shawe and Elting chose not to enter into any form of buy-sell agreement or to implement an agreed exit mechanism or other agreement for ownership disposition. Thus, Elting (50%) and Shawe (49%) each own what they negotiated for – non-controlling interests in TPG, with no right to be bought out and no contractual ability to obtain a control premium for the sale of their shares, but with no restrictions on their right to sell their shares to any third party, and no non-competition or non-solicitation restrictions upon their exit from the Company.

**The Ongoing Delaware State and Federal Court Litigations**

25.     Commencing in approximately 2012, Shawe and Elting engaged in management disputes driven by Elting's increasing demands for substantially larger profit distributions and a buy-out from Shawe.

26.     On May 8, 2014, Elting commenced an action in New York State Supreme Court, seeking to remove Shawe as an officer and director of TPI, the New York operating company, and to dissolve TPI.

27.     Elting obtained a TRO in the New York action that effectively froze Shawe out of the Company's payroll, but the New York Court subsequently vacated the TRO, and denied Elting's request for a preliminary injunction and dissolution on August 4, 2014, finding that her

disputes with Shawe amounted to "squabbles."

28. The New York action remains pending, but has been stayed in favor of the ongoing Delaware state court proceedings.

29. On May 23, 2014, Elting filed a petition against the Shawes in the Delaware chancery court that, after several amendments, sought the appointment of a custodian based on alleged director deadlock and an order to sell TPG, pursuant to 8 *Del. C.* § 226(a)(2), and subsequently petitioned for the appointment of a custodian or receiver under 8 *Del. C.* § 226(a)(1) to resolve shareholder deadlock. As discussed further below, the chancery court granted Elting's requested relief over the Shawes' objections. *See In re Shawe & Elting LLC, et al.,* 2015 WL 4874733 (Del. Ch. Aug. 13, 2015) (hereinafter "Aug. 13 Interlocutory Decision").

30. Elting also sought the "equitable dissolution" of TPG, which the chancery court denied because Elting failed to establish that Shawe had breached any fiduciary duty. *Id.* at *33-35. Elting also alleged and prosecuted breach of contract and breach of fiduciary duty claims against Shawe, but abandoned them post-trial.

31. Elting also sought to have the chancery court impose non-contractual, uncompensated non-competition and non-solicitation restrictions on Shawe as a sanction for alleged litigation misconduct, which would have transferred tens of millions of dollars of value from Shawe to TPG (and ultimately 50% of that value to Elting through the Forced Sale).

32. Elting also sought to have the chancery court prohibit Shawe from participating in the Forced Sale process as a sanction for alleged litigation misconduct.

33. The chancery court rejected Elting's requests for both of these sanctions, recognizing that "[s]uch measures would be unduly punitive." *Id.* at *32.

34. In justifying the Forced Sale of the Shawes' 50 shares of TPG stock, the chancery

court acknowledged that "[t]he record does show that Elting has expressed a desire to be bought out and acted improperly at times to pursue that goal." *Id.* at *28. Nevertheless, it concluded that "it would be unjust to leave Elting with no recourse except to sell her 50% interest in the Company," *id.* at *31 – all that Elting is contractually entitled to – recognizing that the only way the court could give Elting an unbargained-for windfall in the form of a control premium for her shares is to force the Shawes also to put their shares up for sale.

35.     The chancery court appointed Defendant Pincus "as a custodian to oversee a judicially ordered sale of the Company," including "to prepare a proposed plan of sale of "the Company with a view toward maintaining the business as a going concern and maximizing value for the stockholders," and appointed him "to serve as a third director with the authority to vote on any matters on which Shawe and Elting cannot agree and which rise to the level that he deems to be significant to managing the Company's business and affairs." *Id.* at *32.

36.     On August 24, 2015, the Shawes moved for entry of final judgment or certification of an interlocutory appeal and a stay pending appeal. The chancery court denied the motion for interlocutory appeal on September 15, 2015, and denied the motion for entry of final judgment and stay on September 18, 2015.

37.     On September 28, 2015, the Delaware Supreme Court issued an order denying certification for interlocutory review of the Aug. 13 Interlocutory Decision and Order. *Shawe v. Elting*, 2015 WL 5720403, at *1 (Del. Sept. 28, 2015).

38.     On February 8, 2016, the Custodian submitted his "Plan of Sale for a Modified Auction" ("Plan of Sale"), which recommended a public auction process *open to any interested person, including the stockholders* (with or without affiliation with third parties) as buyers, but in which the stockholders were required to participate as sellers, *i.e.,* Shawe would be forced to

offer his TPG stock for sale and for direct transfer to the highest bidder. *In re TransPerfect Global, Inc.,* 2016 WL 3477217, at *2-3 (Del. Ch. June 21, 2016).

39.     In arguing for his proposed Plan of Sale, Pincus asserted "that the Modified Auction *'has the benefit of permitting each stockholder to bid for control* of the Company (alone or in partnership with a third party), as well as permitting third parties (unaffiliated with the stockholders) to bid for the Company.'" *Id.* at *2 (emphasis added).

40.     Thus, Pincus's Plan of Sale provided that Shawe could retain his ownership of TPG stock if the Custodian determines that Shawe prevailed in the Forced Sale.

41.     Pincus also sought to have the chancery court authorize him to impose a non-contractual uncompensated post-employment non-competition, non-solicitation restriction on Shawe because it would make TPG far more valuable to prospective bidders by: 1) transferring the value that the market would pay for the non-competition restriction from Shawe to TPG; and 2) protecting TPG from post-sale competition from Shawe if he did not prevail in the Forced Sale.

42.     As Pincus admitted,



(Pincus Feb. 8, 2016 letter brief, at 13-14, filed under seal in *In re: Transperfect Global, Inc.*).

43.     Elting supported the Plan of Sale in its entirety, including the proposed uncompensated post-employment restrictions, which would provide her with an additional windfall.

44.     Shawe opposed the Plan of Sale, including the uncompensated post-employment restrictions as an unconstitutional taking without just compensation and a violation of his Due Process liberty and property rights, as well as unsupported by state law.

45.     By interlocutory decision of June 21, 2016, the chancery court accepted Pincus's Plan of Sale, except that it rejected Pincus's proposed uncompensated post-employment restrictions. However, the chancery court ordered Pincus to submit an implementing order that, *inter alia*, "reserves the right for the Custodian or any party to seek, upon a showing of good cause, the implementation of post-employment restrictions (among other appropriate relief) to remedy wrongdoing *intended to undermine* the sale process…." 2016 WL 3477217, at *5.

46.     Pincus's Plan of Sale, adopted by the chancery court (except for the uncompensated post-employment restrictions), was expressly based and argued for on the premise that the shareholders could be among the bidders for TPG. Pincus did not request the authority to seek to prohibit Shawe from bidding as a sanction, and the chancery court did not address imposing that punishment for alleged misconduct.

47.     On July 11, 2016, Pincus submitted a proposed implementing Order For Custodian to Undertake a Sale Process, to which the Shawes objected.  On July 18, 2016, the chancery court signed the Proposed Order exactly as requested by Pincus (the "Interlocutory Forced Sale Order"). *In re Transperfect Global, Inc.*, 2016 WL 3949840 (Del. Ch. July 18, 2016).

48.     The Interlocutory Forced Sale Order expressly recognized the requirement for further proceedings in the chancery court and the right of appeal to the Delaware Supreme Court, including from any decision approving the auction results. *See id.* ¶¶ 1, 15, 18, 19.

49.     The Interlocutory Forced Sale Order acknowledged that it was premised on

Pincus's recommendation for an auction, "*where each stockholder could solicit third-party investors as partners in an acquisition of TPG….*," and expressly provided that "(i) each of Ms. Elting, Mr. Shawe and Ms. Shawe ***shall** be permitted to make offers to buy the shares of stock of the Company* that they do not already own, either directly or by way of merger or other transaction; (ii) each of Ms. Elting, Mr. Shawe and Ms. Shawe may solicit third-party investors as partners ("Potential Partners") in a sale of the Company…." *Id.* at *1. (emphasis added).

50.     Although the Interlocutory Forced Sale Order recognized that the chancery court's June 21 decision limited Pincus's authority to seek to impose post-employment restrictions on Shawe only upon a showing of good cause "to remedy wrongdoing ***intended*** to undermine the sale process," *id.* (emphasis added), the Order itself purported to eliminate the intentionality requirement, authorizing instead the imposition of punitive post-employment sanctions for a broad and vaguely defined range of conduct unrelated to any intention to undermine the sale process if Shawe:

> (i) fails to cooperate fully with the Custodian in connection with the performance of his duties under the Order, (ii) takes or fails to take any action which impedes or undermines, or intends to impede or undermine, the sale process or (iii) otherwise fails to comply fully with the Order.

*Id.* at *5.

51.     Although Pincus never sought the authority in the Plan of Sale to impose the punitive sanction of prohibiting Shawe from participating in the Forced Sale Process, and the June 21 decision did not address the issue, the Interlocutory Forced Sale Order provided for the exclusion of Shawe "from the bidding process(es)" upon "a showing of good cause to the Court," without identifying what might constitute "good cause." *Id.* at *3.

52.     Nothing in the Interlocutory Forced Sale Order purported to give Pincus the authority to seek to have the chancery court impose punitive post-employment sanctions against

11

Shawe, or the punitive sanction of prohibiting Shawe from participating in the Forced Sale process in retaliation for exercising his right to challenge the constitutionality of the Forced Sale in federal court, or his First Amendment rights against compelled speech.

53.     Nothing in the Interlocutory Forced Sale Order purported to give Pincus the authority to impose on his own the punitive sanction of banning Shawe from the Forced Sale process, unless Shawe agreed to surrender his right of access to the courts, including his Delaware Federal Action.

54.     On August 18, 2016, the chancery court granted the Shawes' motion for interlocutory appeal of its interlocutory Forced Sale orders, and granted a limited stay during the pendency of the interlocutory appeal of those parts of the Sale Order to which the Custodian consented to a stay.

55.     On August 23, 2016, the Delaware Supreme Court "ORDERED that this interlocutory appeal is ACCEPTED."

56.     On February 13, 2017, the Delaware Supreme Court issued its decision on the "interlocutory appeal," affirming by a 4-1 vote the chancery court's "August 13, 2015 opinion and July 18, 2016 order, and the related orders." *Shawe v. Elting,* 2017 WL 563963, at *1, 14 (Del. Feb. 13, 2017).  The Delaware Supreme Court issued its mandate on March 1, 2017.

57.     On March 1, 2017, the Shawes filed a motion in the chancery court requesting that the chancery court adopt a proposal to modify the Plan of Sale, based on a proposal negotiated with and later repudiated by Pincus.

58.     On March 8, 2017, the chancery court denied the motion, and re-emphasized the interlocutory nature of the state court proceedings:

> the Sale Order requires that the consummation of any transaction "shall be expressly conditioned upon and subject to the approval of the Court." It also sets

forth a process for the parties to submit at that time any objections to the sale process or the terms of a proposed transaction, which the Court will then consider and after which the parties may pursue appellate review. Accordingly, the Shawes and Ms. Elting will have the opportunity in the future to present any good faith objections they wish to make to the sale process and any proposed transaction that results therefrom.

*In re TransPerfect Global, Inc.*, 2017 WL 923457, at *1 (Del. Ch. March 8, 2017).

59.     On March 15, 2017, Philip and Shirley Shawe filed the Delaware Federal Action against Pincus and the Delaware Secretary of State, both in their official capacities, seeking declaratory and, if necessary, injunctive relief. *Shawe, et al. v. Pincus, et al.*, No. 17-cv-277-GMS (D. Del.).

60.     The Complaint alleges that the Delaware courts' construction of 8 *Del. C.* § 226, as applied to authorize the taking of their private property – stock in a Delaware corporation – for transfer to the highest bidder for the express purpose of benefitting two identified private parties – Elting and TPG – constitutes an unconstitutional taking without a public purpose in violation of the Public Use Clause; and violates due process as unconstitutionally vague, for failure to give notice that the statute authorizes the transfer of shares of stock in a private corporation to the highest bidder, and for depriving Shawe of his substantive liberty interest in his life's work, without a sufficient state interest.

61.     Defendants have moved to dismiss the Complaint, which is currently pending.

**Pincus Threatened To Exclude Shawe from Bidding for Exercising His Constitutional Rights**

62.     The unconstitutional Forced Sale process has been moving forward and, upon information and belief, the Forced Sale may be completed by the end of the year, followed by proceedings in the chancery court, the Delaware Supreme Court, and anticipated petition to the U.S. Supreme Court. ██████████████████████████████

■■■■■■■■■■■■■

63.     Although sued only in his official capacity in the Delaware Federal Action as the court-appointed custodian tasked with implementing the unconstitutional taking of the Shawes' private property, based on the Delaware courts' unconstitutional construction and application of a state statute, and despite the absence of any damages claim against him, Pincus has repeatedly expressed his anger and animus against Shawe for naming him as a defendant in that Delaware Federal Action.

64.     In connection with the Forced Sale, Pincus has demanded that Shawe provide an executed management representation letter, ■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■

65.     Shawe will comply with the demand to provide such a letter, ■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■

66.     ■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■

67.     On August 7, 2017, Shawe's counsel sent Pincus an email, annexed hereto as

Exhibit A, and ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

68.    On August 10, 2017, Pincus sent an angry, hostile email to Shawe's counsel, in which he once again attacked Shawe for asserting his legal rights in federal court, which Pincus wrongly characterized as "vexatious litigation," and for ████████████████████████████ ████████████████████████████████████ which Pincus asserted constituted a "refus[al] to cooperate with the sales process." *See* Exhibit B, annexed hereto.

69.    In that August 10 email, Pincus explicitly threatened Shawe in retaliation for exercise of his legal rights to oppose the illegal and unconstitutional Forced Sale, and for refusing Pincus's demands ████████████████████████████████████ "Such conduct is likely to result in our request for remedies, ***including precluding Shawe from participating in the sale process*** -- something your client is not going to be happy with." (Emphasis added).

70.    On August 14, 2017, counsel for Shawe responded to Pincus's retaliatory threats, including advising, "I fundamentally disagree with your position that Mr. Shawe's exercise of his legal rights, including his rights under the United States Constitution, constitutes actionable interference with the Court-ordered forced sale of Mr. Shawe's private property for the benefit of Ms. Elting and other private persons." Exhibit C, annexed hereto.

71.    The purpose of Pincus's threat is to intimidate Shawe into surrendering his

constitutional rights so that Pincus will allow him to continue to participate in the Forced Sale process, so that Shawe can at least attempt to retain ownership of the Company that has been his life's work.

72.     Pincus has not withdrawn his August 10, 2017 threat to retaliate against Shawe by seeking to have the chancery court impose the punitive sanction of excluding him from the Forced Sale process for exercise of his constitutional rights in the Delaware Federal Action and for refusing to speak as Pincus is demanding.

**Pincus Demands that Shawe Surrender His Constitutional Rights** ██████████
██████████████

73.     █████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████

74.     █████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████  Exhibit D, annexed hereto.

75.     █████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

76. Pincus seeks to impose upon Shawe the Hobson's, and unconstitutional, choice ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████ of the Company to which he has devoted his entire life.

77. In addition, according to the unconstitutional condition that Pincus seeks to impose on Shawe, ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████

78. The condition that Pincus seeks to impose on Shawe, ███████████████

███████████████████████████████████████████████████████

██████ is designed to intimidate and coerce Shawe in the exercise of his constitutional rights, and is blatantly unconstitutional.

79. As noted above, the chancery court has already acknowledged that an order prohibiting Shawe from bidding would be a punitive sanction. *See In re Shawe & Elting LLC, et al.,* 2015 WL 4874733, at * 32. ████████████████████████████████

███████████████████████████████████████████ would be a punitive

sanction.

80.     Under the Interlocutory Forced Sale Order, "the Custodian may not exclude ... Mr. Shawe ... from the bidding process(es) without a showing of good cause to the Court." *In re Transperfect Global, Inc.*, 2016 WL 3949840, at *3 (Del. Ch. July 18, 2016).

81.     ████████████████████████████████████████████
████████████████████████

82.     Even under the terms of the Interlocutory Forced Sale Order, Pincus's unconstitutional condition is unauthorized and *ultra vires*.

83.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

84.     Pursuant to the Supreme Court's recent decision in *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017), and its decision in *Mine Workers v. Bagwell*, 512 U.S. 821 (1994), courts cannot impose punitive sanctions without providing the constitutional procedural protections for criminal proceedings, including, without limitation, the right to a jury and beyond a reasonable doubt standard of proof.

85.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ Shawe has not been provided with the constitutional procedural protections for criminal proceedings.

86.     Any effort by Pincus or the chancery court ████████████████████
████████████████████████████████ absent the procedural protections for criminal trials guaranteed by the Fifth and Sixth Amendments to the United States Constitution, including

a jury trial, an independent prosecutor, and proof beyond a reasonable doubt that Shawe has engaged in unprotected conduct intended to undermine the sale process.

87.    By letter dated September 1, 2017, annexed hereto as Exhibit E, Shawe, through counsel, informed Pincus and Credit Suisse ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

88.    A decision by the State of Delaware, acting through the chancery court, including through its court-appointed custodian, to prohibit Shawe from participating in the Forced Sale would itself be an actionable unconstitutional taking without a public purpose.

89.    Pincus's stated premise for holding an auction for the Shawes' private property, adopted by the chancery court in its June 21, 2016 decision, is that the more willing (N+1) bidders for the shares of TPG stock, the more likely the process is to maximize shareholder value, a premise that is undermined if Shawe, a willing bidder, is excluded from the auction process.

90.    At oral argument before the Delaware Supreme Court, the Chief Justice stated, in support of the chancery court's Forced Sale order:

one thing that's undisputed, is that if -- whether anybody would like it or not, if you were going to maximize currently the return on the shares that all the parties own, that the custodian's solution is the best way to do it because it allows any and all willing buyers, upon full information, to have a free opportunity to buy the entity as a going concern?

January 18, 2017 Oral Argument Tr. at 43 (emphasis added).

91.     Delaware's elimination of Shawe as a bidder would be contrary to Pincus's and the state courts' stated rationale as to why the forced auctioning of Shawe's private property to the highest bidder is "the best way to" maximize the sale price.

92.     According to Pincus's rationale for conducting a forced auction of the Shawe's private property, the elimination of Shawe as a bidder would be expected to reduce the price at which the auction winner would acquire the Shawe's shares.

93.     If such were to occur, Shawe will assert a claim in the appropriate fora against the State of Delaware for failure to pay the just compensation required by the Fifth Amendment of the United States Constitution.

### Pincus Intends to Obtain a Non-Competition Restriction Against Shawe to Bolster the Forced Sale Process, Under the Guise of a Sanction for Purported Wrongdoing

94.     As noted, the chancery court has twice rejected efforts, including by Pincus, to impose on Shawe uncompensated non-competition and non-solicitation restrictions, which the chancery court has acknowledged would be a punitive sanction. *See In re Shawe & Elting LLC, et al.,* 2015 WL 4874733, at *32; 2016 WL 3477217, at *4.

95.     Nevertheless, upon information and belief, one of Pincus's agents, Joel Mostrom of Alvarez & Marsal, located and operating at TPI's offices in New York, and acting on Pincus's behalf, has told at least one Company employee in New York that Pincus intends to have the chancery court impose post-employment restrictions on Shawe if needed to make the Company more attractive to bidders.

96.     Upon information and belief, Mostrom made this assertion in response to the employee's question as to what he should tell potential bidders if they asked about the absence of non-competition restrictions on Shawe.

97.     Upon information and belief, Mostrom advised the employee, in substance, to tell potential bidders if they asked that Pincus will ask the chancery court for non-competition restrictions on Shawe if needed for the auction process, and that the court will impose the requested restrictions.

98.     Upon information and belief, Mostrom did not state or indicate that Pincus would seek this punitive sanction against Shawe only because Pincus actually believed Shawe had engaged in wrongdoing justifying such a sanction, but rather to make TPG more attractive to participants in the auction, based on concerns that the absence of post-employment restrictions on Shawe will deter potential bidders, and depress the bids.

99.     Because the chancery court has already ruled that it will not impose post-employment restrictions except as a punitive sanction for wrongdoing, Pincus will need to claim that Shawe has engaged in such wrongdoing, although, upon information and belief, Mostrom has admitted that will in fact not be the reason that Pincus seeks imposition of post-employment restrictions on Shawe.

100.    As the chancery court has also acknowledged, "TPG would be worth more to a buyer if Shawe and Elting were subject to post-employment restrictions on their ability to compete or to solicit customers and employees than it would be without those protections." 2016 WL 3477217, at *4.

101.    As the chancery court also stated, "the company with noncompetes from both of the two … principal Stockholders … might be worth, you know, X plus $100 million. And that

company without them might be worth only X. But guess what? That's your reality you walked into the case with," to which Ms. Elting's counsel replied, "I can't disagree with that." April 27, 2016 Oral Argument Tr. at 93-94.

102.    The court-ordered imposition of an unbargained-for, uncompensated post-employment punitive sanction on Shawe, which would transfer tens of millions of dollars of value from Shawe to TPG (and Elting), either for the purpose of making TPG more attractive to bidders or to enhance its value, or because of Shawe's exercise of his constitutional rights, would unconstitutionally deprive Shawe of a property right without compensation or a public purpose, and of the liberty to pursue the occupation of his choice, in violation of the Takings and Due Process Clauses of the U.S. Constitution, regardless of the sanctions procedures employed.

103.    Upon information and belief, in light of Mostrom's admissions and Pincus's threats in his August 10 email to seek sanctions for Shawe's exercise of his constititutional rights, any effort by Pincus to seek post-employment sanctions upon Shawe based on allegations of constitutionally unprotected wrongdoing would be pretextual.

104.    In addition to the foregoing, any effort by Pincus or the chancery court to impose post-employment punitive sanctions would be unconstitutional, absent the procedural protections for criminal trials guaranteed by the Fifth and Sixth Amendments to the United States Constitution, including a jury trial, an independent prosecutor, and proof beyond a reasonable doubt that Shawe has engaged in misconduct intended to undermine the sale process.

## FIRST CAUSE OF ACTION

### For Violations of the Supremacy Clause
### (Unconstitutional Condition and Threats)

105.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 104 above with the same force and effect as if fully set forth herein.

106. The Supremacy Clause provides an independent, private right of action for actions by states that conflict with federal law.

107. Pursuant to established Supreme Court precedent, "it is not within the power of state courts to bar litigants from filing and prosecuting *in personam* actions in the federal courts." *General Atomic Co. v. Felter*, 434 U.S. 12, 12 (1977) (citing *Donovan v. Dallas*, 377 U.S. 408 (1964)), as such an order would be "in direct conflict with … the Supremacy Clause of the Constitution." *Id.* at 15. Thus, "'state courts are completely without power to restrain federal-court proceedings in *in personam* actions ....'", because "the right to litigate in federal court is granted by Congress and, consequently, 'cannot be taken away by the State.'" *Felter*, 434 U.S. at 16 (quoting *Donovan*, 377 U.S. at 413).

108. "[T]he rights conferred by Congress to bring *in personam* actions in federal courts are not subject to abridgment by state-court injunctions, regardless of whether the federal litigation is pending or prospective," and even if the state court finds the federal court action to be "vexations and harassing litigation." *Id.* at 16-18.

109. The state courts, acting directly or through a court-appointed custodian, cannot avoid the prohibition under the Supremacy Clause against barring a litigant from commencing or prosecuting an *in personam* action in the federal courts by instead sanctioning the litigant for commencing or prosecuting such actions. *See Donovan*, 377 U.S. at 411-12.

110. The chancery court, including through its appointed custodian, lacks the power under the Supremacy Clause to order Shawe to dismiss the Delaware Federal Action; to prohibit him from commencing and prosecuting actions in the federal courts; or to sanction him for failing to dismiss his federal action or for refusing to waive his rights to commence federal lawsuits, ██████████████████████████████████████████████████

██████████████████████

111. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

112. ████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

113. Pursuant to 28 U.S.C. § 2201 and Article VI (the Supremacy Clause), Shawe is entitled to a Declaration that neither Pincus nor the state courts have the power to enforce the challenged condition, and that the condition is null and void.

114. Pursuant to 28 U.S.C. § 2201 and Article VI (the Supremacy Clause), Shawe is entitled to a Declaration that neither Pincus nor the state courts have the power to sanction Shawe ████████████████████████████████████████████ ████████████

115. Pursuant to Article VI (the Supremacy Clause), Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus from enforcing or seeking to enforce the unconstitutional condition, including through the chancery court, and prohibiting Pincus from continuing to threaten Shawe ███

███████████████████████████████████████████████

██████████████████████████

**SECOND CAUSE OF ACTION**

**For Violations of the First and Fourteenth Amendments Under 42 U.S.C. § 1983**
**(Unconstitutional Condition)**

116.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 115 above with the same force and effect as if fully set forth herein

117.    Under the unconstitutional conditions doctrine, the government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests, regardless whether a person has an independent right to the benefit.

118.    The chancery court, as proposed and recommended by Pincus, has granted Shawe the benefit of participating in the Forced Sale of TPG as a prospective buyer.

119.    Shawe has a constitutionally protected interest in pursuing his pending constitutional claims under the Takings and Due Process Clauses in the Delaware Federal Action.

120.    Shawe has a constitutionally protected interest in commencing legal actions asserting any additional claims that he may have that fall within the subject matter jurisdiction of the federal courts in connection with the Forced Sale, including any claims that may arise from

████████████████████████████████████████████████████████

██████████████████████████████████

121.    ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

122.    Said condition is unconstitutional, in violation of Shawe's constitutional rights to due process and his right of access to the courts.

123.     Pursuant to 28 U.S.C. § 2201 and the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled to a Declaration that the challenged condition constitutes an unenforceable unconstitutional condition.

124.     Pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus from enforcing or seeking to enforce the unconstitutional condition, ███████████████████ ████████████████████████████████████████████████████ ███████

## THIRD CAUSE OF ACTION

### For Violations of the First and Fourteenth Amendments Under 42 U.S.C. § 1983 (Unconstitutional Threats)

125.     Plaintiff Shawe repeats and realleges the allegations set forth in paragraphs 1 through 124 above with the same force and effect as if fully set forth herein.

126.     Shawe has a right, protected by the First and Fourteenth Amendments, and granted by Congress, including pursuant to 28 U.S.C. §§ 1331, 1343(3), 2201, and 42 U.S.C. § 1983, to commence and maintain actions in the federal courts to assert and to protect his constitutional rights arising from the Forced Sale process.

127.     On August 10, 2017, Pincus, in his capacity as a court-appointed custodian, threatened to retaliate against Shawe for asserting his constitutional rights in the Delaware Federal Action, by seeking to have the chancery court exclude Shawe from further participation as a buyer in the Forced Sale process.

128.     Pursuant to 28 U.S.C. § 2201, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled to a Declaration that Shawe cannot

be excluded from the Forced Sale process for asserting legal claims in the federal courts challenging the Forced Sale.

129.     Pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus from continuing to threaten Shawe with exclusion from the Forced Sale process for commencing or prosecuting legal actions challenging the Forced Sale or the Forced Sale process.

130.     Pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus from seeking to have Shawe excluded from the Forced Sale process for commencing or prosecuting legal actions challenging the Forced Sale or the Forced Sale process.

## FOURTH CAUSE OF ACTION

### For Violations of the First and Fourteenth Amendments Under 42 U.S.C. § 1983 (Compelled Speech)

131.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 130 above with the same force and effect as if fully set forth herein.

132.     Pincus, in his capacity as a court-appointed custodian, including in his August 10, 2017 email, is attempting to compel Shawe's speech ███████████████████ ████████████████████████████████████

133.     Shawe has a right, protected by the First and Fourteenth Amendments, to refuse Pincus's attempt to compel him to speak, ██████████████████████████ ███████████████████████.

27

134.   Pincus has threatened to retaliate against Shawe for Shawe's resistance to Pincus's attempt to compel Shawe to speak ██████████████████████████████ ███████████████████████████ by seeking to have the chancery court exclude Shawe from further participation as a buyer in the Forced Sale process.

135.   Pursuant to 28 U.S.C. § 2201, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled to a Declaration that Pincus cannot compel Shawe to make statements ███████████████████████████████████ ███████████████████████████████████

136.   Pursuant to 28 U.S.C. § 2201, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled to a Declaration that Shawe cannot be excluded from the Forced Sale process, or otherwise sanctioned, ██████████████ █████████████████████████████████████████████ █████████████████████████████████████████████ ████████████████████████████

137.   Pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus from compelling Shawe to make statements ████████████████████████████████ ████████████████████████████████

138.   Pursuant to the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus from seeking to exclude Shawe from the Forced Sale process, or otherwise seeking to sanction him,

███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████

## FIFTH CAUSE OF ACTION

**For Violations of the Fifth and Fourteenth Amendments Under 42 U.S.C. § 1983
(Unconstitutional Taking, Violation of Due Process)**

139.    Plaintiff Shawe repeats and realleges the allegations set forth in paragraphs 1 through 104 above with the same force and effect as if fully set forth herein.

140.    Upon information and belief as to statements of Pincus's agent, Joel Mostrom, Pincus, in his capacity as a court-appointed custodian, intends to have the chancery court impose uncompensated post-employment non-competition and non-solicitation restrictions on Shawe, which would transfer tens of millions of dollars of value that belongs to Shawe to TPG (and Elting), in order to make TPG more valuable and to make TPG more attractive to potential bidders.

141.    A court-imposed, uncompensated non-competition or non-solicitation restriction on Shawe would be an unconstitutional taking of Shawe's private property in violation of the Just Compensation and Public Use Clauses of the Fifth Amendment.

142.    A court-imposed, uncompensated non-competition or non-solicitation restriction on Shawe would be an unconstitutional deprivation of Shawe's substantive liberty and property rights and interests, without a compelling or substantial government interest, in violation of the Fourteenth Amendment's Due Process Clause.

143.    Pincus's threats, through his agent Mostrom, to seek court-imposed, uncompensated non-competition non-solicitation restrictions on Shawe under the guise of a "sanction" for alleged wrongdoing, despite Pincus's agent's admission that the purpose would be

29

to increase the value of TPG and make it more attractive to potential bidders, violates Shawe's rights to due process.

144.    Pursuant to 28 U.S.C. § 2201, the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled to a Declaration that the imposition of uncompensated post-employment non-competition or non-solicitation restrictions on Shawe would constitute an unconstitutional Taking in violation of the Just Compensation and Public Use Clauses, and a violation of Shawe's substantive liberty and property rights and interests.

145.    Pursuant to 28 U.S.C. § 2201, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled to a Declaration that the imposition of uncompensated post-employment non-competition or non-solicitation restrictions on Shawe under the guise of a "sanction" for "wrongdoing" would violate Shawe's rights to due process.

146.    Pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus, directly or through his agents, from continuing to threaten Shawe with the punitive sanction of uncompensated post-employment non-competition or non-solicitation restrictions, in light of the admission that the reason Pincus intends to seek the restrictions is unrelated to wrongdoing by Shawe intended to undermine the sale process, but rather to increase the value of TPG and make it more attractive to potential bidders.

147.    Pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983, Shawe is entitled, if necessary, including if the Court is unable to provide timely declaratory relief, to a preliminary injunction prohibiting Pincus, directly or through his agents, from seeking the punitive sanction of uncompensated post-

employment non-competition or non-solicitation restrictions, in light of the admission of Pincus's agent that the reason Pincus intends to seek the restrictions is unrelated to any wrongdoing by Shawe.

WHEREFORE, Plaintiff demands:

1.  A declaratory judgment according to the terms set forth in the above causes of action.

2.  If necessary, including if the Court is unable to provide timely declaratory relief, a preliminary injunction granting the relief requested in the above causes of action.

3.  Only in the event that Pincus acts in violation of a declaratory judgment issued by this Court, a permanent injunction granting the form of preliminary relief requested in the above causes of action.

4.  Reasonable attorneys' fees and costs.

5.  Such other and further relief as the Court deems just and proper.

Dated: September 1, 2017

David B. Goldstein, Esquire (DG-8291)
Eric M. Lieberman, Esquire (EL 4822)
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
61 Broadway, 18th Floor
New York, New York 10006
(212) 254-1111
dgoldstein@rbskl.com
elieberman@rbskl.com
*Attorneys for Plaintiff Philip R. Shawe*

Of Counsel
Alan M. Dershowitz, Esquire
1525 Massachusetts Avenue
Cambridge, MA 02138